UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
RONALD BRODEN,                                          :
            Plaintiff,                                :
                                       :      **OPINION AND ORDER**
v.                                                      :
                                       :      21 CV 10411 (VB)
BORIS RUBINSTEIN, M.D., M.P.H.,                         :
                 Defendant.                         :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Ronald Broden brings this action against defendant Boris Rubinstein, M.D., M.P.H., plaintiff's former psychiatrist, alleging defendant improperly disclosed confidential information about plaintiff's treatment to plaintiff's parents.

      Now pending is defendant's motion to dismiss the amended complaint pursuant to Rule 12(b)(6).  (Doc. #20).

      For the foregoing reasons, the motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

      For the purpose of ruling on the motion, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

      In 1999, plaintiff began receiving psychiatric treatment from defendant, a family friend, after plaintiff began experiencing feelings of depression.  However, during the relationship, plaintiff alleges defendant socialized with plaintiff's father at monthly dinners during which defendant discussed plaintiff's treatment without plaintiff's consent.

At first, defendant provided therapy and medical treatment to plaintiff for a reduced fee, but after about four months, he provided his services for free.

As early as 2002, plaintiff alleges he was no longer benefitting from defendant's therapy services and vocalized that concern to defendant.  Nevertheless, plaintiff contends he did not want to offend defendant and defendant failed to refer plaintiff to another provider, so plaintiff continued to see defendant for therapy.

The parties' relationship soured in 2018 when defendant allegedly delayed refilling plaintiff's Klonopin prescription and cut therapy sessions short.  Because of this, beginning in April 2019, plaintiff contends he wrote strongly worded emails to defendant expressing his "disdain . . . concerning DEFENDANT'S lack of care for PLAINTIFF as a therapist and doctor over the years."  (Doc. #3 ("Am. Compl.") ¶ 24).

In May 2019, plaintiff claims defendant called him to apologize for "fail[ing]" plaintiff and invited plaintiff and plaintiff's parents to participate in one final therapy session.  (Am. Compl. ¶ 25).  Plaintiff's father attended this session on May 22, 2019, during which plaintiff contends defendant cursed at plaintiff and terminated plaintiff as his patient.  Soon thereafter, plaintiff posted negative online reviews about defendant and sent a series of "scathing" emails to defendant.  (Am. Compl. ¶¶ 28-29; Doc. #21-4 (the "Emails")).

In February 2020, defendant allegedly met with plaintiff's parents outside of plaintiff's presence and, without plaintiff's consent, discussed the Emails and private details about plaintiff's therapy and treatment.  Plaintiff also alleges defendant showed the Emails to plaintiff's parents.

Plaintiff alleges these improper and unauthorized disclosures have soured his relationship with his aging parents, which in turn worsened plaintiff's mental health and caused him physical

health problems.  Plaintiff also alleges his mother reduced plaintiff's inheritance because of what she learned from defendant.

## DISCUSSION

I.     Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[1]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In deciding a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by

---

[1]     Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  The Court may also consider any documents "integral to the complaint" when their import and authenticity are not disputed.  Id.  A document is considered "integral to the complaint" when "the complaint relies heavily upon its terms and effect."  Id.

II.     Breach of Confidentiality Claim

Defendant argues plaintiff fails to state a claim for breach of physician-patient confidentiality because the Emails[2] do not relate to plaintiff's treatment and plaintiff waived his right to confidentiality.

The Court disagrees.

A.     Applicable Law

Under New York law, "[u]nless the patient waives the privilege, a person authorized to practice medicine . . . shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."  N.Y. C.P.L.R. 4504(a).  The privilege "covers all information relating to the nature of the treatment rendered and the diagnosis made," including "not only . . . information orally communicated by the patient, but also . . . information ascertained by observing the patient's appearance and symptoms, unless those factual observations would be obvious to lay observers."  Chanko v. Am. Broad. Cos. Inc., 27 N.Y.3d 46, 53 (2016).  "The privilege should be given a broad and liberal construction to carry out its policy."  Id. at 52.

---

[2]     The Emails referenced in the amended complaint were submitted by defendant with his motion and are not attached to the amended complaint.  Because each of plaintiff's claims assert defendant is liable, in part, because he disclosed the content of the Emails, the Emails are "integral" to the amended complaint and the Court will consider them in deciding the motion.  See, e.g., Melwani v. Lipton, 2019 WL 4572789, at *2 (S.D.N.Y. Sept. 20, 2019) (extrinsic emails establishing the agreement the defendant allegedly breached were integral to the complaint).

"Although not covered by the statute, information obtained in a professional capacity but not necessary to enable the physician to fulfill his or her medical role is a protected confidence, the disclosure of which constitutes professional misconduct in the absence of patient consent or legal authorization."  Chanko v. Am. Broad. Cos. Inc., 27 N.Y.3d at 53.

> The elements of a cause of action for breach of physician-patient confidentiality are: (1) the existence of a physician-patient relationship; (2) the physician's acquisition of information relating to the patient's treatment or diagnosis; (3) the disclosure of such confidential information to a person not connected with the patient's medical treatment, in a manner that allows the patient to be identified; (4) lack of consent for that disclosure; and (5) damages.

Id. at 53–54; accord Conti v. Doe, 535 F. Supp. 3d 257, 280 (S.D.N.Y. 2021).

B.    Application

Here, defendant does not dispute the existence of a physician-patient relationship, that defendant acquired information relating to plaintiff's treatment, or plaintiff's alleged harms. Thus, whether plaintiff's claims survive the motion turn on whether plaintiff has alleged the information disclosed was confidential and, if so, whether he consented to its disclosure.

1.    Disclosure of Confidential Information

As an initial matter, plaintiff claims defendant disclosed two categories of allegedly confidential information.  First, plaintiff contends defendant spoke with plaintiff's parents about his treatment, alleging that "from 1999 until 2019, DFENDANT would have monthly dinners, and/or meals, with PLAINTIFF'S father, during which time DEFENDANT would share highly personal details about PLAINTIFF'S treatment and care" (Am. Compl. ¶ 22), and that during the February 2020 meeting with plaintiff's parents, defendant "shared private details of PLAINTIFF'S therapy, and treatment."  (Am. Compl. ¶ 31).  Second, plaintiff alleges defendant discussed and showed the Emails to plaintiff's parents in February 2020, which plaintiff alleges are confidential themselves.

5

Plaintiff has stated a claim for breach of physician-patient confidentiality with respect to the alleged disclosures to plaintiff's father over dinners and during the February 2020 meeting with plaintiff's parents. Plaintiff alleges the disclosed information comprised personal details about his treatment that he did not authorize defendant to share. Thus, plaintiff has plausibly pleaded that defendant disclosed information connected with his treatment to a third party without plaintiff's consent.

Regarding the Emails, defendant makes two arguments for why they are not confidential information.

First, defendant argues the content of the Emails is not confidential. That is, defendant contends the Emails do not contain information relating to plaintiff's treatment and instead are "post-treatment rants against [defendant] containing insults, threats and harassing statements." (Doc. #22 at 6). Although the Emails do contain disturbing and threatening language, they also reference plaintiff's treatment and diagnoses. For example, in several emails, plaintiff mentions defendant prescribed him narcotics. (See, e.g., Emails at 18). The Emails also make repeated references to defendant's notes taken during treatment (Emails at 21, 23, 26, 35), as well as conversations between defendant and plaintiff during treatment concerning plaintiff's mental health. (Emails at 21, 26, 37, 40). Construing the amended complaint in the light most favorable to plaintiff, as the Court must at this stage, plaintiff has plausibly pleaded the Emails contain information related to plaintiff's treatment and diagnosis.

Second, defendant argues the Emails are not confidential because of when they were sent. That is, defendant contends the Emails do not relate to plaintiff's treatment because plaintiff sent them after the physician-patient relationship was formally terminated. However, plaintiff alleges he began sending "strongly worded emails" to defendant about his treatment in April 2019,

6

before defendant formally terminated plaintiff's treatment in May 2019.  (Am. Compl. ¶ 24).

Accepting this allegation as true, defendant is incorrect that all Emails were sent when plaintiff

was no longer a patient.

Nevertheless, as discussed above, certain Emails sent after the relationship was

terminated include information related to plaintiff's treatment, such as plaintiff's prescriptions,

notes defendant took while treating plaintiff, and conversations during their therapy sessions.

Even after a physician-patient relationship ends, treatment-related information learned during the

relationship remains confidential.  See, e.g., McMahon v. N.Y. Organ Donor Network, 161

A.D.3d 680, 681–82 (1st Dep't 2018) (the physician-patient "privilege is personal to the patient

and is not terminated by death").  Thus, it is irrelevant when the Emails were sent because their

content, learned by defendant during the physician-patient relationship, relates to plaintiff's

treatment and diagnosis.

Accordingly, plaintiff has alleged that defendant disclosed confidential information to a

third party.

> 2.   Waiver

Even if defendant disclosed confidential information, defendant argues plaintiff waived

any duty of confidentiality when plaintiff (i) posted reviews of defendant on the Internet;

(ii) agreed to the May 22, 2019, meeting with defendant and his father at which defendant

terminated the physician-patient relationship; and (iii) copied family members on some of the

Emails.

Regarding the online reviews, plaintiff's waiver in these instances is limited to the

information revealed.  See Farrow v. Allen, 194 A.D.2d 40, 45–47 (1st Dep't 1993) (rejecting

argument that nonparty patient waived the privilege with respect to matters discussed in letter

submitted by patient's psychiatrist to third party but outside the actual contents of the letter).
Here, plaintiff alleges he gave "his opinion" of defendant in the online reviews; he does not
allege he publicly posted any confidential information regarding his treatment.  (Am. Compl.
¶ 28).  Accordingly, drawing all reasonable inferences in plaintiff's favor, the Court cannot
conclude that plaintiff's posting of online reviews comprised a waiver of his right to maintain the
confidentiality of treatment-related information.

Regarding the May 22, 2019, meeting, plaintiff does not allege any confidential
information was discussed in the presence of his father.  During the meeting, plaintiff contends
defendant "was immediately defensive . . . cursed at PLAINTIFF, and then 'fired,' or terminated,
PLAINTIFF as a patient," none of which alleges the disclosure of any treatment-related
information.  (Am. Compl. ¶ 27).  Therefore, the amended complaint does not allege plaintiff
waived the privilege during the May 2019 meeting with defendant and his father.

Finally, although plaintiff does copy his father and brother on one Email, and he sent
some Emails directly to his parents, he does not copy his family on all Emails arguably
discussing confidential information.  (See, e.g., Emails at 21, 23, 26, 35, 37, 40).  Accordingly,
the Court may reasonably infer defendant's alleged disclosure of the Emails exceeded the scope
of any waiver by plaintiff copying or sending some to his family.

Accordingly, plaintiff's claim for breach of physician-patient confidentiality shall
proceed.

III.   Negligence Claim

Defendant contends plaintiff's negligence claim should be dismissed as duplicative of his
breach of physician-patient confidentiality claim.

The Court agrees.

Under New York law, "[t]he key to determining whether a claim is duplicative of [another] is discerning the essence of each claim" without regard for each claim's label.  Johnson v. Proskauer Rose LLP, 129 A.D.3d 59, 68 (1st Dep't 2015).  "Duplicative claims shall be dismissed when they are based on identical conduct and seek the same relief."  Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd., 257 F. Supp. 3d 348, 359 (S.D.N.Y. 2017).

Here, plaintiff's negligence claim is premised on the same factual allegations as his breach of physician-patient confidentiality claim, namely, defendant's alleged disclosure of plaintiff's confidential treatment-related information, and plaintiff seeks identical money damages with respect to each claim.  See Paladini v. Capossela, Cohen, LLC, 2012 WL 3834655, at *5–6 (S.D.N.Y. Aug. 15, 2012), aff'd, 515 F. App'x 63 (2d Cir. 2013) (summary order).  That plaintiff's negligence claim is premised on a duty "not to intentionally harm plaintiff" by disclosing confidential information is a distinction without a difference, because both claims turn on whether defendant breached a duty to plaintiff by disclosing plaintiff's confidential information without consent.  (Am. Compl. ¶ 42); see Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 398–99 (S.D.N.Y. 2000) (breach of contract and fraud claims dismissed as duplicative of plaintiff's malpractice claim when the "allegations require[d] identical proof of a deviation from the professional standard of care").

Because plaintiff pleads identical facts and duties to support both of his claims, if plaintiff were to succeed on his breach of duty of confidentiality claim, he likewise would prevail on his negligence claim.  This renders the negligence claim duplicative—and not alternative. See In re Skat Tax Refund Scheme Litig., 356 F. Supp.3d 300, 325 (S.D.N.Y. 2019) ("A claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other.").

9

Accordingly, plaintiff's negligence claim must be dismissed as duplicative of the breach of physician-patient confidentiality claim.

## CONCLUSION

The motion is GRANTED IN PART and DENIED IN PART.

Plaintiff's negligence claim is DISMISSED.

Plaintiff's breach of physician-patient confidentiality claim shall proceed.

By November 28, 2022, defendant shall file an answer to the amended complaint.

The Clerk is directed to terminate the motion.  (Doc. #20).

Dated: November 14, 2022
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

10